1 Daniel L. Miranda (SBN 021938)
MIRANDA LAW FIRM
2 633 E. Ray Road, Suite 106
Gilbert, AZ 85296
3 Tel: (480) 719-8482
4 Fax: (480) 719-8481
Email: dan@mirandalawpc.com

5
6 Robert Tauler (SBN 241964) (*pro hac vice*)
Tauler Smith LLP
7 11111 Santa Monica Blvd., Suite 500
Los Angeles, California 90025
8 Telephone: (310) 590-3927
E-mail: rtauler@taulersmith.com
9

10 *Attorneys for Plaintiff*
*Nutrition Distribution LLC*

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| NUTRITION DISTRIBUTION LLC, an Arizona Limited Liability Company,<br><br>Plaintiff,<br><br>vs.<br><br>KING PEPTIDES LLC, a Florida Limited Liability Company; AARON SINGERMAN, an individual; PJ BRAUN, an individual; UNLIMITED PRODUCTS AND SOLUTIONS, LLC a Limited Liability Company; IAN RICH, an individual; and DOES 1 through 10, inclusive,<br><br>Defendants. | CASE NO. 2:16-cv-00451 - DLR<br><br>**FIRST AMENDED COMPLAINT FOR FALSE ADVERTISING IN VIOLATION OF THE LANHAM ACT § 42 (a)(1)(B))**<br><br>**[DEMAND FOR A JURY TRIAL]** |

Plaintiff Nutrition Distribution, LLC, dba Athletic Xtreme ("ND" or "Plaintiff"), by and through its undersigned attorneys, submits this Complaint against defendant King Peptides LLC, Aaron Singerman, PJ Braun, Unlimited Products and Solutions, LLC, and Ian Rich ("King Peptides" or "Defendant"), and in support thereof, avers as follows:

**INTRODUCTION**

1. This is a civil action arising out of Defendant's false and misleading advertising and statements in connection with its various purported "research peptides," including but not limited to, its Growth Hormone Releasing Hormone ("CJC-1295"), Growth Hormone Releasing Peptide-2 ("GHRP-2"), Growth Hormone Releasing Peptide-6 ("GHRP-6"), Mechano Growth Factor ("MGF"), and Melanotan products (collectively, the "Research Peptides"). As evidenced by King Peptides' representations on its website, these "Research Peptides" are unlawfully marketed and misbranded as "not for human consumption" and "intended for laboratory research purposes only." Contrary to these "disclaimers," King Peptides' advertisements claim that its "Research Peptides" will provide numerous purported benefits to consumers seeking to enhance their physiques, including but not limited to, increasing the production of human growth hormone, promoting muscle gain and strength, weight loss, anti-aging properties, increasing lean body mass, and reducing body fat.

2. Peptides are chemical compounds containing 2 or more amino acids linked by the carboxyl group of 1 amino acid and the amino group of another. Critically, peptides cannot be dispensed for human use without a prescription from a licensed medical practitioner due to their toxicity and potential for harmful effect.

3. Despite the foregoing, there is an illegitimate market for peptides among bodybuilders, competitive athletes, and others seeking to enhance their physiques, since it is believed that the use of these substances will enhance muscle development, among other potential physical benefits.

4. Contrary to King Peptides' various disclaimers that its "Research Peptides," are "not for human consumption" and "intended for laboratory research purposes only,"

1
**FIRST AMENDED COMPLAINT**

King Peptides clearly markets and advertises products to consumers seeking to alter the structure and function of their bodies.  Thus, as demonstrated below, King Peptides' "Research Peptides" are actually "drugs," "new drugs," and/or "prescription drugs" as defined by the United States Federal Food, Drug, and Cosmetic Act ("FDCA").  Indeed, King Peptides' various "disclaimers" and intentional mislabeling is nothing more than a scheme to defraud authorities and to avoid Food and Drug Administration ("FDA") scrutiny.

5.     Defendant's continuing false, misleading, illegal and deceptive practices violate the Lanham Act, have unjustly enriched Defendant at the expense of Plaintiff, and have caused Plaintiff extensive and irreparable harm, including but not limited to, loss of revenue, disparagement, and loss of goodwill.

6.     Among other things, this action seeks to enjoin Defendant from the marketing and sale of its "Research Peptides," as Defendant is illegally and falsely marketing such products in violation of the Lanham Act.

## JURISDICTION AND VENUE

7.     This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. 1332 (diversity jurisdiction) because Plaintiff asserts causes of action arising under federal law and the parties are citizens of different states and the controversy exceeds the value of $75,000.

8.     This Court has personal jurisdiction over King Peptides because Defendant has, directly or through its intermediaries (including distributors, retailers, and others), developed, licensed, manufactured, shipped, distributed, offered for sale, sold, and advertised its products in the United States, the State of Arizona, and this district, including but not limited to, the "Research Peptides" at issue here.  Defendant has purposefully and voluntarily placed these products into the stream of commerce with the expectation that they will be purchased in this district.

9. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions which gave rise to the claim occurred in this district. *See Rowpar Pharm., Inc. v. Lornamead, Inc.*, No. CV13-01071-PHX DGC, 2013 WL 5530825 (D. Ariz. Oct. 7, 2013) (finding venue in Arizona proper). Alternatively, venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(3).

## PARTIES

10. Plaintiff Nutrition Distribution, LLC, dba Athletic Xtreme ("ND" or "Plaintiff") is an Arizona limited liability company with its principal place of business at 14215 N. 8th Pl., Phoenix, Arizona, 85022.

11. Defendant King Peptides LLC ("King Peptides" or "Defendant") was registered as a Florida limited liability company, with its principal business address listed as 9605 Parkview Avenue, Boca Raton, Florida 33428.

12. Defendant Aaron Singerman is an individual residing in Florida and a member of King Peptides LLC.

13. Defendant PJ Braun is an individual residing in Florida and a member of King Peptides LLC.

14. Defendant Unlimited Products and Solutions, LLC is a Florida Limited Liability Company.

15. Defendant Ian Rich is an individual residing in Florida.

16. Plaintiff is ignorant of the true names and capacities of defendants sued herein as Does 1- 10, inclusive, and therefore sued these defendants by such fictitious names. Plaintiff will amend this Complaint to allege their true names and capacities when ascertained. Plaintiff is informed and believes and thereon alleges that each of these fictitiously named defendants is responsible in some manner for the occurrences herein alleged, and that Plaintiff's injuries as herein alleged were proximately caused by the aforementioned defendants.

## FACTUAL ALLEGATIONS

17. The nutritional supplement industry is one of the fastest growing and most lucrative in the United States. A recent Forbes article estimates that nutritional supplement sales accounted for $32 billion in revenue in 2012 and predicts this number to grow to $60 billion within ten years. The growth and size of the nutritional supplement market and the relatively low barriers to entry provide perverse incentives for unfair competition prohibited by the Lanham Act and other illegal activity.

### Plaintiff Nutrition Distribution & "Mass FX Black"

18. Plaintiff is a cutting edge sports supplement manufacturer and marketer. From its inception, Plaintiff was a leader in the nutritional supplement market, specifically for bodybuilding.

19. Plaintiff has several categories of bodybuilding products, including pre-workouts, muscle-gainers, fat burners, and male performance enhancement.

20. Around 2011, Plaintiff began developing a new product in the muscle-gainer sub-market of the nutritional supplement world.

21. After devoting its resources for over a year on product development and testing, Plaintiff introduced "Mass FX Black" in April 2013.

22. In addition to "Mass FX Black," Plaintiff has introduced numerous natural nutritional supplements that directly compete with Defendant's "Research Peptides," including but not limited to, "Advanced PCT," "Ultra Reps," "Stacked BCAA," "SuperSize," "Gym Juice," and "German Creatine."

### Defendant King Peptides And Its Purported "Research Peptides"

23. Defendant King Peptides is a competing supplement company in Florida.

24. King Peptides is engaged in false and misleading advertising with respect to its various purported "Research Peptides," including but not limited to, Growth Hormone Releasing Hormone ("CJC-1295"), Growth Hormone Releasing Peptide-2 ("GHRP-2"), Growth Hormone Releasing Peptide-6 ("GHRP-6"), Mechano Growth Factor ("MGF"), and Melanotan II. As evidenced by King Peptides' representations on its website, these

"Research Peptides" are unlawfully marketed and misbranded as "not for human consumption" and "intended for laboratory research purposes only." Contrary to these "disclaimers," King Peptides' advertisements claim that its "Research Peptides" will provide numerous purported benefits to consumers seeking to enhance their physiques, including but not limited to, increasing the production of human growth hormone, promoting muscle gain and strength, weight loss, anti-aging properties, increasing lean body mass, and reducing body fat.

25. King Peptides is not shielded from liability merely by labeling its products as "research peptides," which are purportedly "not for human consumption" and "intended for laboratory research purposes only." To the contrary, King Peptides clearly markets and advertises its "Research Peptides" to consumers seeking to alter the structure and function of their bodies, including bodybuilders and other competitive athletes.

26. King Peptides makes the following representations on its website, which demonstrate that the intended use of its "Research Peptides" are in fact intended for human use:

   a. "GHRP-2 substantially stimulates the pituitary gland's increased natural production of the body's own endogenous human growth hormone. GHRP2 has shown on its own to robustly increase IGF-1 levels, and even greater results occurred when used with Growth Hormone Releasing Hormone to which also stimulates the pituitary gland to produce increased natural secretion of human growth hormone. This also boosts the hypothalamus function as well."

27. "The major side effect accompanied by the use of GHRP-6 or other GH secretagogues is a significant increase in appetite because secretagogues mimic the action of Ghrelin, a peptide which is released naturally in the lining of the stomach and increases hunger and gastric emptying. GHRP-6, other secretagogues and ghrelin stimulate the anterior pituitary gland causing an increase in GH release." Thus, King Peptides' "Research Peptides" are plainly not "for laboratory use only." Rather, the

language asserting that King Peptides products are "not for human consumption" are a dog whistle to bodybuilders who purchase hardcore drugs without being informed of the risks.

28. Indeed, many of the products sold by king peptides are either pharmaceuticals or otherwise harmful to humans. Defendants fail to disclose the negative effects of their products.

## CLAIMS FOR RELIEF
## FIRST CLAIM FOR RELIEF
**(False Advertising in Violation of Section 43(a)(1)(B) of the Lanham Act)**

29. Plaintiff incorporates the allegations contained in the foregoing paragraphs as though fully set forth herein in their entirety.

30. King Peptides has purposely made false and misleading descriptions of fact concerning the nature, characteristics and qualities of the products it promotes and sells on its website, including its various purported "Research Peptides." As evidenced by King Peptides' representations on its website, these "Research Peptides" are unlawfully marketed and misbranded as "not for human consumption" and "intended for laboratory research purposes only." Contrary to these "disclaimers," King Peptides' advertisements claim that its "Research Peptides" will provide numerous purported benefits to consumers seeking to enhance their physiques, including but not limited to, increasing the production of human growth hormone, promoting muscle gain and strength, weight loss, anti-aging properties, increasing lean body mass, and reducing body fat.

31. Defendant's false and misleading advertising has the tendency to deceive a substantial segment of the public into believing that they are purchasing a product with different characteristics. Defendants fail to disclose the harmful side effects of their products, including severe liver damage.

32. The deception is material because it is likely to influence a consumer's purchasing decision, especially if the consumer is unaware of the serious risks of using

these purported "Research Peptides."  By falsely advertising their product as "NOT FOR HUMAN CONSUMPTION" Defendants attempt to get an end-around proper disclosures of the negative side-effects of its products, such as severe liver damage which their customers are not informed of.

33. King Peptide's "Research Products" directly compete with Plaintiff's products, including but not limited to, its bodybuilding supplement "Mass FX," as well as its various other natural nutritional supplements, "Advanced PCT," "Ultra Reps," "Stacked BCAA," "SuperSize," "Gym Juice," and "German Creatine."

34. Defendant has introduced false statements into interstate commerce via marketing and advertising on various websites and shipment of their products into interstate commerce containing false advertising.

35. Plaintiff has suffered both an ascertainable economic loss of money and reputational injury by the diversion of business from Plaintiff to King Peptides and the loss of goodwill in Plaintiff's natural nutritional products.  Indeed, Defendant's conduct is a black eye on the industry as a whole, and has the tendency to disparage Plaintiff's products and goodwill.  Defendants have created an illegitimate marketplace for bodybuilding supplements that directly compete with Plaintiff's products.  Bodybuilders are drawn to Defendants "hard-core" products to the detriment of Plaintiff and the marketplace as a whole.

36. King Peptide's actions, as described above, constitute false and misleading descriptions and misrepresentations of fact in commerce that, in commercial advertising and promotion, misrepresent the nature, characteristics, and qualities of their products in violation of Section 43(a)(1)(B) of the Lanham Act.

## SECOND CLAIM FOR RELIEF

**(Violation of RICO)**

(against all Defendants)

37. Plaintiff incorporates the allegations contained in the foregoing paragraphs as though fully set forth herein in their entirety.

38. Under the Federal Food, Drug and Cosmetic Act, 21 U.S.C. § 301(g)(1) the term "drug" includes (1) any articles intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in man or other animals, and (2) articles (other than food) intended to affect the structure or any function of the body of man or other animals.

39. The introduction or delivery for introduction into interstate commerce of any misbranded drug is prohibited 21 U.S.C. § 331(a). Misbranding encompasses dispensing without a prescription a drug intended for use by which, "because of its toxicity or other potentiality for harmful effect, or the method of its use, or the collateral measures necessary to its use, is not safe for use except under the supervision of a practitioner licensed by law to administer such drug." 21 U.S.C. § 353(b)(1). A drug is also misbranded where its labeling was false or misleading in any particular (§ 352(a)), where its labeling does not bear adequate directions for use (§ 352(f)(1)), or where the drug was manufactured, prepared, propagated, compounded or processed in an establishment not registered with the Secretary of Health and Human Services (§ 352(o)). The introduction or delivery for introduction into interstate commerce of a misbranded drug is a felony. (§ 333(a)(2)).

40. "Peptides" are chemical compounds containing 2 or more amino acids linked by the carboxyl group of 1 amino acid and the amino group of another. Due to their toxicity or potential for harmful effect, peptides cannot be dispensed for human use without a prescription from a licensed medical practitioner.

41. There is an illegitimate market for peptides among body builders and others who engage in weight training, since it is believed that the use of these substances enhance muscle development.

42. Defendants Singerman and Braun formed King Peptides in 2014 to capitalize on the market for these illegal goods. Kingpeptides.com (the "Site") is engaged in a comprehensive scheme to obtain money and property by means of false and fraudulent pretenses, representations and promises, including the illicit sale of peptides and other pharmaceuticals labeled as "research chemicals." In 2015, ownership of the

Site changes hands and it is now run by Unlimited Products and Solutions, LLC, listing "Ian Rich" as its only member.

43. On the Site, several misbranded drugs are listed under tabs "peptides" "research liquids" and "research chemicals." Additionally, there are disclaimers on the Site that are part of a scheme designed to deceive regulators and internet service providers, but have no basis in reality.

44. The drugs sold on the site are bodybuilding drugs, including the following: Anastrozole, used treat breast cancer (body builders use it to downcycle from steroid use); Clenbuterol, a sympathomimetic amine used by sufferers of breathing disorders as a decongestant (bodybuilders use it to burn fat); Sildenafil (Viagra), used for erectile dysfunction and popular in the body building community to counteract the side effects of other drugs. Additionally, the Site sells peptides like Melanotan II, GHRP-6 and PT-141.

45. Illegal distribution of peptides, research liquids, and research chemicals is facilitated by use of the Internet, through which substances could be sold without a prescription by sources in other countries, including the People's Republic of China. The Conspiracy Defendants have knowingly sold the above drugs and peptides to be delivered by commercial interstate carrier.

46. The Conspiracy Defendants have violated the substantive RICO statute, 18 U.S.C.A. § 1962 as detailed above by receiving income from a pattern of racketeering activity engaging in interstate commerce. Defendants have conspired among themselves to engage in the above activity.

47. Plaintiff has been injured in his business or property by reason of the Conspiracy Defendants violation of section 1962 by, *inter alia*, the diversion of sales to the Site, which sells products directly in competition with Plaintiff's products.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury.

# **PRAYER**

Wherefore, Plaintiff Nutrition Distribution LLC prays for judgment against Defendants as follows:

1. For preliminary and permanent injunctive relief enjoining Defendant from producing, licensing, marketing, and selling any purported "Research Peptides," including but not limited to, Growth Hormone Releasing Hormone ("CJC-1295"), Growth Hormone Releasing Peptide-2 ("GHRP-2"), Growth Hormone Releasing Peptide-6 ("GHRP-6"), Mechano Growth Factor ("MGF"), and Melanotan II;
2. For an award of compensatory damages to be proven at trial;
3. For an award of any and all of Defendant's profits arising from the foregoing acts in accordance with 15 U.S.C. § 1117 and other applicable laws;
4. For restitution of Defendant's ill-gotten gains;
5. For treble damages;
6. For punitive damages;
7. For costs and attorneys' fees; and
8. Any other relief the Court may deem appropriate.

DATED: April 22, 2016

By:    s/
Robert Tauler (SBN 241964)
Tauler Smith LLP
E-mail: rtauler@taulersmith.com

Daniel L. Miranda (SBN 021938)
MIRANDA LAW FIRM
Email: dan@mirandalawpc.com

*Attorneys for Plaintiff*